UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GEORGE H. OSTEEN and GLENDA OSTEEN | CIVIL ACTION NO. 09-688 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ZIMMER AUSTIN, INC., et al. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Summary Judgment [Record Document 20], filed on behalf of Defendant, Zimmer, Inc.  Defendant moves for judgment in its favor as a matter of law on the ground that Plaintiffs have no evidence to support the essential elements of their product liability claims. [Record Documents 20, 26].  For the reasons stated herein, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

### FACTUAL BACKGROUND[1]

Plaintiff George Osteen is a 60-year-old male with a long-standing history of cortisone-dependent rheumatoid arthritis, inflammatory polyarthritis and degenerative joint disease.  In 2005, Mr. Osteen was deemed disabled by the Social Security Administration based upon his arthritis in various joints, blindness in one eye, his inability to hold or grip objects with his hands, diabetes, and other unrelated medical conditions.

---

[1]The facts stated herein are primarily taken from Defendant's Statement of Undisputed Material Facts [Record Document 22], which must be deemed admitted for purposes of this motion.  See, infra, Local Rule 56.2.

In early 2005, Mr. Osteen reported to his orthopedic surgeon, Dr. Craig Springmeyer, M.D., that he recently sprained his left knee and was experiencing a "constant, dull ache and swelling." [Record Document 23, Ex. 2 ("Bankston Report") at p.2]. Dr. Springmeyer diagnosed Mr. Osteen with osteoarthritis of the left knee and a tear of the right medial meniscus, and recommended Mr. Osteen undergo a left total knee arthroplasty (also known as a knee replacement) and arthroscopy of the right knee. Id. On April 15, 2005, Mr. Osteen was admitted to Christus Schumpert Hospital where Dr. Springmeyer implanted the Natural Knee II ("NK II") Durasul All Poly Patella, NK II SinterLock Porous Coated Femoral Component, NK II Modular Cemented Tibial Baseplate, and NK II Durasul Congruent Tibial Insert into his left knee. Id. at pp.2-3.

Mr. Osteen did well following the surgery. Dr. Springmeyer's post-operative notes of November 25, 2005 and April 3, 2006 state that there were no abnormal findings on the physical exam and that Mr. Osteen reported as having no problems with his left knee. Id. at p.4.

On December 24, 2007, Mr. Osteen was treated at Christus Schumpert emergency room for left lower extremity pain and swelling. Mr. Osteen reported hearing a "pop" in his left knee as he tried to get out of bed four days earlier. Id. at p.5; Osteen Deposition, p.202. On December 26, 2007, Mr. Osteen was seen for follow-up by Dr. Edward Anglin, one of Dr. Springmeyer's associates, who opined that the effusion might be due to a loose fragment caused by fracture of one of the polyethylene components. Id. Mr. Osteen was subsequently seen by Dr. Springmeyer on January 2, 2008. While x-rays showed the prosthesis to be in good position, Dr. Springmeyer noted that the tibia seemed to "sag back

on the femur." Dr. Springmeyer diagnosed him with a ruptured posterior cruciate ligament ("PCL") and recommended exchanging the left tibial liner. Id.

On January 9, 2008, Mr. Osteen was again admitted to Christus Schumpert where Dr. Springmeyer replaced the patellar component of the artificial knee, which had fractured at its pegs and dislodged in the joint, along with the tibial insert. Id. Mr. Osteen did well following surgery until April 1, 2008, when he developed an antibiotic-resistant infection known as methicillin-resistant staphylococcus aureus ("MRSA"). Id. at p.6. As a result of the infection, Mr. Osteen was required to undergo three additional surgeries on his left knee during which additional NK II components were both implanted and explanted. Id. at pp.6-7.

## PROCEDURAL HISTORY

On January 13, 2009, Plaintiffs George and Glenda Osteen filed a Petition for Damages in the First Judicial District Court, Caddo Parish, Louisiana against Zimmer, Inc.[2] ("Zimmer"), manufacturer of the NK II Durasul All Poly Patella ("the artificial knee"). [Record Document 1]. Plaintiffs allege the artificial knee was unreasonably dangerous due to defects in its manufacture and design, that Zimmer failed to provide adequate warnings for the artificial knee, and that the artificial knee failed to conform to the specific representations made by Zimmer. Id. Plaintiffs further allege that Zimmer made material misrepresentations or omissions regarding the artificial knee to the United States Food & Drug Administration ("FDA").

---

[2]The Petition for Damages identifies Zimmer Austin, Inc. as a defendant. Zimmer Austin, Inc. is now known as Zimmer, Inc., and is collectively referred to with Zimmer, Inc. as "Zimmer." See Record Document 26, n.1.

On April 24, 2009, Zimmer removed this products liability action to the Western District of Louisiana, Shreveport Division, on the basis of diversity jurisdiction. On June 23, 2009, the Court issued a Scheduling Order, requiring an exchange of witness lists by October 30, 2009 and submission of Plaintiffs' expert reports by November 1, 2009. [Record Document 17]. The Scheduling Order also required completion of discovery by January 15, 2010. Id.

On January 19, 2010, Zimmer filed a motion for summary judgment asserting Plaintiffs have no evidence that the artificial knee was unreasonably dangerous under the Louisiana Products Liability Act ("LPLA"), as Plaintiffs failed to identify or disclose any expert witnesses in response to Zimmer's written discovery requests or as required by Federal Rule of Civil Procedure 26(a)(2)(B) or this Court's Scheduling Order. [Record Document 20]. Plaintiffs' response to Zimmer's motion for summary judgment was due February 2, 2010. Eight days later, on February 10, 2010, Plaintiffs filed a motion requesting additional time to oppose Zimmer's motion for summary judgment. [Record Document 29]. Plaintiffs' claimed they needed additional time to have an expert examine the artificial knee. Finding that Plaintiffs' failed to establish "good cause" for an extension or that the failure to act was the result of "excusable neglect,"[3] Plaintiffs' motion was denied. See Record Document 34. Consequently, there is no opposition to Zimmer's motion for summary judgment in the record.

---

[3]Plaintiffs' request for an extension of time was filed more than one year after this action was initiated, more than three months after Plaintiffs' expert disclosures were due, and more than three weeks after the discovery completion deadline.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule

56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

The Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. R.S. § 9:2800.52; Evans v. Ford Motor Co., 484 F.3d 329, 334-35 (5th Cir. 2007); Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 261-62 (5th Cir.), cert. denied, 537 U.S. 824, 123 S.Ct. 111, 154 L.Ed.2d 34 (2002). A plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA. La. R.S. § 9:2800.52. Although "the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer." Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 244-45 (E.D. La. 1996), aff'd, 106 F.3d 1245 (5th Cir. 1997).

In order to maintain a successful action under the LPLA, a plaintiff must establish: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damages arose from a reasonably anticipated use of the product by the claimant or someone else. La. R.S. § 9:2800.54(A). A plaintiff may prove that the product is "unreasonably dangerous" in

construction or composition, in design, because of an inadequate warning, or because it does not conform to an express warranty of the manufacturer about the product. La. R.S. § 9:2800.54(B) and (D). "Defects are not presumed to be present by the mere occurrence of an accident." Spott v. Otis Elevator Co., 601 So.2d 1355, 1364 (La.1992).

Zimmer contends Plaintiffs cannot maintain a successful action under the LPLA because there is no evidence proving the existence of a defect at the time of sale, proximate causation, or a safer alternative design.[4] [Record Document 26]. Zimmer further contends there is no evidence that Zimmer failed to provide an adequate warning or that the artificial knee failed to conform to Zimmer's own specific representations. Id.

Because Plaintiffs bear the burden of proof on each of the elements of their claims, La. R.S. § 9:2800.54(D); Caboni v. General Motors Corp., 398 F.3d 357, 361 (5th Cir. 2005), Zimmer was not required to submit evidentiary documents to support its motion, but needed only to point of the absence of evidence supporting the Plaintiffs' claims. Latimer v. Smithkline & French Lab., 919 F.2d 301, 303 (5th Cir. 1990). Nevertheless, Zimmer submitted the affidavit of Stephen Spiegelberg, chemical engineering Ph.D. , who attests "with a reasonable degree of scientific certainty" that the artificial knee at issue in this case "was not unreasonably dangerous as there was no material, design, or manufacturing defect in the NK II patellar device," and that "there was no basis for Zimmer to issue a post-sale warning concerning peg failure." [Record Document 23, Ex. 1 ("Spiegelberg Affidavit") at p.8]. In fact, Spiegelberg notes that Mr. Osteen received the exact same patellar

---

[4]To establish a design defect under the LPLA, a plaintiff must prove that "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage." La. R.S. § 9:2800.56.

component in his right knee in January 2008 and there is no indication that this implant has failed. Id. Zimmer also submitted the report of Dr. A. Brent Bankston, board-certified orthopedic surgeon, who opined that "the failure of Mr. Osteen's knee was related to the PCL laxity and not to any defect of the patella component." [Bankston Report, p.8]. According to Dr. Bankston, the design of the NK II knee and the Durasul All Poly Patella component is within industry standards, and none of the medical records indicate that the patella component was improperly implanted. Id. Dr. Bankston also notes that the patella component in Mr. Osteen's left knee was replaced on January 9, 2008, with the same type patella and an ultra congruent tibial insert which eliminated the PCL laxity. Id.

  Plaintiffs have failed to come forward with any evidence, expert or otherwise, to rebut the opinions of Zimmer's experts and create a genuine issue of material fact for trial. In fact, the Court finds the record is devoid of any evidence whatsoever concerning whether Mr. Osteen's damages were proximately caused by a characteristic of the artificial knee or whether the artificial knee was "unreasonably dangerous" as defined under the LPLA. As the Fifth Circuit has noted, Louisiana law does not allow a fact finder to presume a product a characteristic of the product is unreasonably dangerous solely from the fact that an injury occurred. See Grenier v. Med. Eng'g Corp., 243 F.3d 200, 205 (5th Cir. 2001); Kummel v. Bombardier Corp., 206 F.3d 548, 551 (5th Cir. 2000), reh'g *en banc* denied, 218 F.3d 745.

## CONCLUSION

  In the absence of any evidence establishing the essential elements of Plaintiffs' claims under the LPLA, Zimmer is entitled to judgment in its favor as a matter of law.

Accordingly, Zimmer's Motion for Summary Judgment [Record Document 20] shall be **GRANTED**, and Plaintiffs' claims shall be **DISMISSED WITH PREJUDICE.**

A Judgment consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 7th day of May, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE